Good morning and may it please the court. My name is David Bremer for Appellants Lindsey and Sharon Ballinger. Your Honors, in Koontz, the Supreme Court held that a government demand for money that is tied to the use of real property is a per se physical taken. And in this case, the city has conceded that it's requirement that the Ballingers pay $6,500 to their tenants is linked to the use of their real property. This is it. They're answering brief on page 13. Counselor, counselor, I guess I want to ask you this. I'm understanding that you're alleging that the money itself is the constitutionally protected property that has been taken in this case. Is that true? That's right. It's the money itself. And the reason it's a constitutionally protected property interest, Your Honor, is because in Koontz. So what if it's the money itself? And I understand that because that's what I think you've argued many times. What authority do you have to support a conclusion that money in and of itself is property under the Fifth Amendment? Your Honor, I have the United States Supreme Court's decision in Koontz. But Koontz isn't about that. Your Honor, Koontz doesn't Koontz suggests rather than that, that Koontz, a monetary obligation that burdens the petitioner's ownership that a specific parcel of land works of taking doesn't have anything to do with just the money. Or put another way, Koontz says when the government commands the relinquishment of funds linked to a specific identifiable property, it doesn't say just money. Right. And we're not claiming that. Maybe I should back up again and be more clear. I'm sorry if I'm not clear. We're not claiming that a monetary obligation that's imposed by statute or regulation is a taking. What we're claiming is we're staying within the rule that you just cited in Koontz, that a discrete fund of money that is linked to a specific parcel property like the Ballingers is a per se taking. Here's the problem. And this is what I'd like to see the distinction on, because I understand what you're you're trying to make the link. Koontz does suggest that if the money is linked to the property, that that there could be an exaction or a taking. But how would you distinguish your argument from just, say, a real property tax? I mean, why wouldn't a real under your theory that requiring requiring this payment that is because of action taken with regard to a property, if that's enough, then why wouldn't a real property tax also be a taking? Because it's also tied. It's a government action that's tied to to a property. Your Honor, I would refer the court again to the Koontz decision in which the Supreme Court addressed this exact question. And what the court said is that the problem of distinguishing between taxes and monetary obligations that might be a taking is is more difficult in theory than it is practice. We know that that taxes that put money into a general fund that burden all people similarly are not takings. But that doesn't mean that a a specific taking of a specific sum cannot be a taking. That's what the court said in Koontz. And so let let me ask you, based on that concession, could the could the city have done this differently? What if they had said every property owner who has every time a tenant turns over, you have to pay four thousand dollars as a tax. And then it allowed property owners who left their property to come in and apply to that fund and get money similar to a tax program? Is that what your complaint is, is how it's set up? I mean, if if they had set it up that way, would you be in here making the same argument you are? Probably not. If if if you have a general obligation that burdens all property owners to pay into a fund and then tenants can go apply for that, that's a general taxation scheme. And those are very difficult to challenge as takings generally. But again, as in Koontz, I'm going to take the court back there. And if I sound repetitive, I'm sorry. But the court specifically addressed this issue and said, when you take a specific fund of money from a specific person that's linked to a specific parcel, excuse me, this is enough of an identifiable property interest to trigger per se takings analysis. We're not going to decide that all obligations, monetary obligations are takings or that taxes are. We don't need to do that. And this court doesn't need to do that either. This is an as applied physical takings claim based on the circumstances of this ordinance and this case. And our argument is not that every monetary obligation or even that every relocation scheme is unconstitutional, but that this taking of a sum of money, the Ballenger savings so that they as a ransom for them to get back into their own home is subject to per se taking analysis based on the Koontz decision. And I think to confirm that, if you read the dissent in Koontz, it's even more clear about what the majority did than even the majority decision to an extent. The dissent in Koontz knew very well that what the court was holding is that it is a per se taking that treated as a per se taking for the government to command the relinquishment of a distinct amount of money as part of the use of a parcel or real property. And there you go, the use of the parcel. And that's what I have a problem with here, I think, because here it's not the use of the parcel. So for example, if the city of Oakland had instead structured this to say, well, we're not going to require you to make a payment, but if the tenant, if you tell the tenant to leave in July, we think that's a burden. So we're going to force you to give them a free month's rent. So they stay in your property for a month. Where they've just conditioned it to say, you pay this money, I don't understand how that's conditioned on the use of the property. Well, I'm sorry, that's not clear. I think it is, I think it's clear to the Ballengers because they can't lawfully move into their own home, a specific residence in Oakland, unless they give over $6,500 to their tenants at the government's demand. So from their point of view, there's no doubt that this is about, that this demand is inexorably intertwined with their residential properties. They cannot move into their property. Well, I'm interested in your change of argument. It doesn't seem to me that that's what you've alleged in your brief at all, that your brief is all about money. And now we've had a change of that, but let's just go to this. Let's go to a different approach. Your opponents say that this ordinance is just like every other landlord tenant regulation, that it most regulates your client's voluntary use of the property, not intruding into the landlord's dominion over the property. And you don't respond to that argument. What's your response? Well, my response is that doesn't address the question about whether it's a taking to command the Ballengers to... Well, but just a minute, but just a minute. If I go back to Tahoe, where we have Justice Stevens, who's talking about what it is that's a taking and what isn't a taking, and it's on page 1479 of the Supreme Court's, he says a government regulation that merely prohibits landlords from evicting tenants unwilling to pay a higher rent, citing Block versus Hirsch, or that bans certain private uses of a portion of an owner's property and citing other cases, or forbids the private use of certain space and cites other cases. And he's suggesting that those are not takings. And so again, what he's suggesting in Tahoe is that this is just another landlord tenant regulation that just simply regulates the client's voluntary use of the property, and therefore it is not a taking. And in fact, in Tahoe, well, in fact, in Laredo, if they hadn't have put the TV right on the roof, there wouldn't have been a taking. So again, I'm back to the same question. So I lost the audio. It went way down, Your Honor. But I heard most of your questions, so I'm going to answer it. The answer to what I think Your Honor is raising is that the Supreme Court has repeatedly made clear that when you have a per se physical taking of a property interest, it doesn't become a lesser intrusion because it's part of some broader regulatory scheme. And in Laredo, the Supreme Court addressed, again, this very issue. That was a statute in Laredo that regulated landlord-tenant relations. And the court said that that wasn't important when a physical taking occurs as part of that regulation. So the cable box was treated as a physical taking, even though that cable box was part of a landlord-tenant regulation. A physical taking does not turn into some a regulatory taking just because it's packaged in a regulatory scheme for rental property. You could look at Laredo footnote 17, for instance. And in Horne is another example. In Horne, the Supreme Court again dealt with this issue and said that the government can't turn a physical taking of personal property into some lesser intrusion simply by saying, well, this physical taking of, in Horne, the raisins is just part of our regulation of your commercial dealing. So it's not really a physical taking because you voluntarily entered into commercial enterprise, perhaps like renting property. My concern with your argument is it seems to me, and I found this case very frustrating, that you're trying to do exactly the reverse. That is turn what would fit most of the attributes of a regulatory taking into a physical taking. And for the life of me, I can't figure out why. Maybe it's because you're trying to develop the you think will help you elsewhere, but what, what supports the notion that extracting money becomes a physical taking, which is what it seems to me we have here. In Cootes, your honor, the Supreme Court had to decide whether a monetary fee to get a permit was subject to Nolan Dolan, which I hope to get to in a minute. A necessary predicate of that analysis is to decide whether the government outside the permitting process could outright demand the interest. In Cootes it was money. At page 613 through 615, the court said, yes, when a taking of money is linked to the use of real property, we are going to treat that as a per se physical taking. And so I guess maybe I don't know how to get around that. I mean, you've heard from us before, and I guess I'll join my colleagues. Cootes is about getting a permit, and it's not at all unusual for what are customarily viewed, I think, as exaction cases for there to be a question as to whether the government can extract something, be it an easement or giving up part of your property for something else, or in this case, perhaps cash. But that's not what we're talking about here. And so my sense remains, you've got a case with actually some pretty good facts, and you probably picked out the case because it's got some great facts, but you're trying to put it into a box where it really doesn't fit. Why isn't my initial concern that you're trying to convert the opposite of what you said the court was being criticized for? Why isn't that the case here? Why shouldn't I view it that way? Well, because again, in Cootes, the court had to decide the physical taking per se taking issue before it got to exaction. But I'd like to discuss the exaction question while I still have some time, the Nolan Dolan question, because if you do not agree with me that this is a physical taking based on the Cootes decision, then we need to turn to the Nolan Dolan issue about whether this is an unconstitutional condition. And it clearly fits in. Can I just ask, maybe this will direct you there. You rely mainly on commercial builders, but we have McClung. And I guess I'm struggling with why we wouldn't apply McClung. McClung seems more consistent with what some of the other cases have come out since then, commercial builders sort of stands on its own. So maybe you could address why we should not, in your opinion, how can we distinguish McClung? Even if we thought McClung was wrong. Let me go one further than Judge Nelson has gone. There's a case, Packdale versus San Francisco, which is a 2020 case. It relies on McClung. It says the same thing that Judge Nelson is saying. It says, and I read it, as a matter of law, general requirements imposed through legislation are not subject to Nolan Dolan. Right in it. How can I get around that? Which relies on McClung. I mean, you've got Judge Nelson's question and now you got that on top of it. Thank you. I'll try to address them as quickly and as best I can. As for McClung, in McClung, the issue there was a storm water pipe requirement. That is not an exaction. It had never been identified as an exaction. That is a normal development requirement. If you look at Loretto, there's a line, a passage in Loretto where the Supreme Court says that these normal safety requirements like fire extinguishers and the like, those aren't going to be treated as takings, but they're going to be just ordinary development requirements. So in McClung, there was no exaction. In this case, on the other hand, and I'm going to answer the other question soon. In this case, there is no dispute that if this requirement, this monetary tenant payment were imposed by a planning commission that Nolan and Dolan would apply. The city does not dispute this. It isn't an exaction. So McClung simply doesn't deal with an exaction. It never did and it can't. As for the secondary question about Pactel, again, as I understand Pactel, the Nolan-Dolan question wasn't, that case is not about that. It was again, a physical takings case. And as I heard your quote, I don't have it before me. It doesn't say that exactions can't be subject to general legislated exactions. It says general requirements. I'm not sure what it's talking about there. Well, it says general requirements imposed through legislation. So they're distinguishing between the normal exaction and legislation. And they're saying that is not subject to Nolan-Dolan. Right. And this is a legislation. It is legislation. It's not the normal exaction. Well, exaction, maybe it's a terminology. An exaction is a taking of a specific type of property interest that the court has recognized, money it has recognized and real property interest like an easement. So the question here is whether this exaction, when it's legislatively imposed, as opposed to administrative, as opposed to administratively imposed, is exempt. The Supreme Court has never directly addressed that question, but neither has this court in McClung. It did not address it. Right there in Pactel. Well, they addressed it based on, on McClung, but McClung itself does not, deals with a stormwater pipe. That's a ordinary development restriction. Nothing that the Supreme Court has ever recognized as an exaction like money in this case. So there's no, there's no case in the Ninth Circuit that holds that a monetary fee that would otherwise be subject to Nolan-Dolan loses that simply because the government is smart enough to impose it by legislation rather than by executive action. Let's assume that we get past these questions and we get to Nolan-Dolan. Doesn't Nolan-Dolan require a specialized individualized inquiry? And that doesn't seem consistent or the application doesn't seem consistent with what, by all accounts, is a generalized scheme here that just, you know, puts out a monetary fee that has to be incurred. But Nolan-Dolan seems to say, look, you can't use the individual permitting process or the individual, you know, government action process in an individualized way to go after an individualized property. And that, that's where I'm not sure we get to here. Right. And, and Nolan-Dolan aren't exactly clear on that because in Nolan-Dolan, those requirements that were ultimately imposed flowed from a general regulatory scheme. In Dolan, you can look and see the ordinance and the code where, where it flowed from. So it's not clear again. I'll just, I'll just say that the Supreme Court hasn't directly addressed it, but I don't believe this court would. And I just think it's nature of the takings clause in constitutional adjudication to say that the legislature has an exemption from the takings clause or the unconstitutional conditions doctrine, because we think that there's some political protection. The very purpose of the takings clause is to protect against majoritarian tyranny. So I just, I think it's open question in this court. And I think on general constitutional doctrine and the protection from majority, majoritarian limitations, the court should, should hold that the, that the, this is subject to Nolan-Dolan, this payment tenant requirement and my time is up. So I'll. Yeah, thank you. We'll give you some time for rebuttal. This is a case worthy of further exploration. Mr. McLaughlin. Good morning, your honors. May it please the court. My name is Kevin McLaughlin. I represent defendant and appellee city of Oakland. I'll try to address the issues in the order that the parties briefed them. The city's uniform residential tenant relocation ordinance is a regulation of the landlord tenant relationship. It regulates a specific use of property and owner move in eviction. It requires a payment of money. A long line of cases hold that such regulations that affect transfers of wealth in the context of a landlord tenant relationship are analyzed as regulatory takings. The volunteers alleged initially a regulatory taking claim in this case and then voluntarily dismissed it in their amended complaint. So do you think that they would have had a regulatory taking claim? Would that have been successful? I don't believe that they could have prevailed upon one, but that's the appropriate framework through which this sort of ordinance should be analyzed. Okay. So, but they haven't brought that and they've brought a fifth amendment, well among them, a fifth amendment physical takings claim. Would you agree, it sounds like, that California law recognizes money as a property interest, right? Certainly money is a property interest. So if that's the case, then why can't it be, why can't money alone constitute a taking under the fifth amendment? Well, there's a long line of cases confirming that money itself without more is fungible. The U.S. versus Ferry case says that. Well, the Supreme Court seems to suggest in those cases that it's dependent upon the state law, that state law can define whether there's a property interest or not. So why don't we look to California and say, well, California says it's a property interest, therefore it could fall within the fifth amendment takings clause. I think money under the federal constitution or the California constitution has some protection as property. All property, whether it's real property or fungible property, has some property value, some sort of protection. That's not the central question here. Looking at the Kuntz decision, the key to the court's holding there was that there was a demand for money in connection with a specific parcel of real property. But Mr. Brammer's argued that, and it's a point somewhat well taken, that the Bollingers can't use their property. They can't even get back in to use their own property. They designed a lease that was going to go to a month-to-month. They complied with the lease. They were not evicting these tenants in any sense of the word that anyone else, perhaps outside of the city of Oakland, would use the term eviction. But you've termed it as an eviction just because they want to come back in and properly use their property. And city of Oakland has said you can't use your own property unless you pay this fine. So why isn't that identified with the property itself? The landlord is terminating the lease, and that is an eviction under California law, as well as under the city's ordinance. But there's no dispossession of the Bollingers. Under the ordinance, section 8.22.850E, they can come back, take possession of their property without paying the relocation payment. It provides that the failure to pay the relocation payment is not an offense to an unlawful detainer action by a landlord. And then the Bollingers would then face a civil action from their tenant. Yeah, well, okay. But I mean, I don't think that answers the question. Because we're talking about real property and the dispossession of the right to inhabit real property. No, they can use it. They can use it. We can just throw them in jail if they try and use it. There's a major difference between the right to possess real property. It's made very clear in the Loretto decision, as well as in the Horn decision more recently. Interest in a specific piece of real property versus an obligation to simply pay money. Every regulation of real property. Mr. Bremer's argument is, and I understand it's a hurdle. The Coons case is a hurdle for them. But his argument is, the way this ties is that they can't use their property unless you... Let me state it another way. What if the city of Oakland had required a $500,000 payment? Would that give rise to a takings claim? I think under a regulatory takings analysis, you might have a Lucas situation where it removed, obliterated all value on the property. It might interfere with investment backed expectations to such a degree that it would rise to the level of... But your point is that still has to be analyzed under regulatory takings. Okay, that's fair. So then we get back to Mr. Bremer's position is they can't use their property unless they pay $6,000. So how is that not enough to get into the Coons exception that this is connected to real property? Coons does not simply say a payment obligation connected to real property writ large is a per se taking. It talks about the linking to a specific piece of real property. At page 614, the fulcrum this case turns on is the direct link between the government's demand and a specific parcel of real property. Okay, but I don't even understand how that is responsive because in an as-applied challenge, what other piece of property are you talking about? I guess if it's a potential challenge, but in an as-applied challenge, all you're talking about is the Bollinger's property here. Well, we're dealing with an ordinance of general application. It's not a permitting decision that's focused on a specific parcel. The ordinance makes no distinction between the Bollinger's parcel on MacArthur Boulevard and any other parcel in the city of Oakland. Yeah, but isn't that the same issue in Coons? No, it's not. That was a specific decision with respect to the... Right, but under a permitting process that applies general. But it applies, it was a specific application to Mr. Coons' property. That was the majority's response to the dissent's concern that now all of a sudden all regulation of real property with a per se taking, that was how the majority cabined the Coons' decision. Notably, Coons was not a claim about the taking of real property. It was a claim that the monetary obligation involved burdened the petitioner's ownership of a specific parcel of land. That's the same quote that Judge Smith verbalized a little bit earlier. There's no claim in this case that the ordinance burdened or diminished the value of the Bollinger's ownership of a parcel. The claim is only that by requiring a payment of money, there was a taking of the Bollinger's money. And so we get back to the point that money is fungible. In the Eastern Enterprise's decision, all nine justices, it was a very fractured decision, but all nine justices agreed that there was not a per se physical taking imposed simply by the obligation to pay money. The plurality would have analyzed it as a regulatory taking. That's what they did. They found that it was so extensive and so retroactive that it did in fact rise to the level of a regulatory taking. The other five justices wouldn't have found that a taking analysis would apply. Can I ask you about it? Yeah. So, I mean, this is obviously coming up more and more and how marks should be applied. And there are other courts that have said that you can look to the dissent and I guess a concurring judge to come up with a five justice majority. That seems to be your position, but it feels like in the Ninth Circuit, that's precluded by the Davis case. Could you address that? Whether under Davis, the en banc decision in Davis, whether we would still be permitted to interpret Eastern, sorry, but that case, Eastern Enterprises, whether we'd be able to interpret that in the way you're advocating that we do. Candidly, I'm not familiar with the opinion, Your Honor. I apologize. However, the point I was making referred to the holding of the views of all nine justices. I mean, all of them agreed that there was no physical taking in that case. Justice O'Connor in the plurality opinion was dismissive of that notion. She said, of course, this is not a per se taking. And Justice Kennedy in his concurrence absolutely agreed with that. And certainly the dissent did as well. So the point I'm trying to make is one that was embraced by all nine justices of the court in that case. Whether we would apply regulatory taking or not, it's not, that's not an issue in this case. I think the voluntary nature of the use of the property is also important, and that was addressed in the Pactel decision in that same footnote four that we were discussing in the context of legislative exactions. But the Pactel decision holds that a claim based upon, for a physical taking based upon voluntary conduct fails plainly as a matter of law. Now, there is perhaps some nuance to that with the Loreto and the Horn decisions, where you have a regulation that intrudes upon the right to exclude others from a piece of property. But as explained in the Yee case and the FCC case, both of which, by the way, were unanimous opinions of the Supreme Court, that right to exclude others is not implicated in a regulation of the landlord-tenant relationship where it creates a transfer of wealth. This is true even where the regulation has a significant economic impact. It was a threefold impact in the FCC case. And the Yee case addressed rent control, which has many parallels to the situation in this case and creates a very transparent transfer of wealth from landlord to tenant that's analyzed under a regulatory takings framework and generally would not amount to a taking. There's no occupation of real property here. There's no appropriation. And the means do matter. The Horn case recently reiterated that, finding that there was a meaningful difference between the government taking raisins, physically taking them, versus prohibiting the sale of raisins. Let me ask you, when you talk about there's nothing about occupation here, it seems to me there is something about occupation here. Seems to me that here, what is really happening is that, in fact, the landlord must permanently allow the tenant to be there without paying this money. Well, as I raised earlier, the ordinance itself provides that the failure to pay the payment is not a defense to an unlawful detainer action. In other words, the landlord can evict the tenant and make recourse to the courts if necessary to do that without making the payment. That demonstrates that this is truly a financial obligation. It does not dispossess the landlord of the property specifically designed that way. But again, I mean, we already addressed this, but with the threat of criminal sanctions, civil minimum, but even criminal sanctions, I just don't see that that argument holds as much water. I mean, this is not as innocuous as you're making it sound. Well, it's a regulation of the landlord-tenant relationship that requires an expenditure of money. In my view, that falls right in line. I understand that, but you're also putting significant coercion behind it, and the Supreme Court does seem to be concerned when the government uses that coercive power in a way to obtain the rights to land. Now, I get the point. The question is whether this is tight enough to the land, but it's twice that you've tried to describe this regulation as fairly innocuous, and I don't think that that's the distinction that's warranted here. Okay. I want to make sure I have time to address the exaction claim and the point that generally applicable legislation is not subject to an exaction analysis. This court certainly held that in the McClung case. I think the idea that counsel raised that, well, it was a development regulation that required using a certain size of pipe, and therefore it was not an exaction. I don't think that that's a distinction with any kind of difference. There's no exaction in this case either. This is a generally applicable regulation of the landlord-tenant relationship. There's no sort of quid pro quo where the government is trying to leverage something, giving up of a constitutional right in exchange for some governmental benefit. Normally, it's the ability to develop a parcel. There's nothing sought by the city here that would diminish the value of the Bollinger's real property. It really has none of the trappings of any sort of ordinary unconstitutional condition or exaction scenario. I do think the McClung decision is right on point, and the Pactel decision is as well. That dealt with a ordinance that said that to convert a tenancy in common to a condominium, the owner had to offer a lifetime lease to existing tenants. I think that sort of ordinance creates a much of dispossessing the landlord and forcing them to allow tenants to occupy a unit for their lifetime. But even in that case, this court held that sort of generally applicable legislation is not subject to an exaction analysis, and it doesn't constitute a per se taking. I think that does kind of dovetail back to what we were talking about as far as dispossession and that raising some level of concern. But in the end, I do think on the physical taking, the voluntary nature of it is an important consideration and one that was determinative, it sounds like, in the Pactel decision. Back again to the exaction analysis, the point that generally applicable legislation is not subject to an exaction analysis is right in line with how the Supreme Court has repeatedly characterized it in the Dolan decision, in City of Monterey, in Lingle, and in Coons itself. They've characterized it uniformly as being tethered to the special context of land use permitting decisions, because those decisions create specific concerns that are not present in, among other things, generally applicable legislation. In order to buy this argument, we've really got to buy your argument that in no way is the property at all affected in this, because the only thing that you've got to do, because it can't be a defense, you just go forward and do what you have to do in the court as it relates to the money. But otherwise, it seems as if it is authorizing a permanent occupation of the landlord's property. It's taking away from the owner the right to exclude others from entering and using your would have said is exactly what this should have an exaction would have made. Respectfully, Your Honor, I don't think that it does that. I don't think that it dispossesses the owner of the property. It doesn't impede upon the right to exclude others. It doesn't impede upon the title to the property. It doesn't raise a Loretto type issue at all. It's much more because the why doesn't it? I mean, it clearly puts a burden there. So is your argument that the burden isn't enough to qualify? I mean, it's the difference between fungible money versus real property, which is a paramount distinction. But at some point, I think you would agree with me that at some point, even the money portion of it could be problematic. Now your position is that's only under a regulatory takings analysis. That may be. But on the point that Judge Smith is hitting on, on dispossessing the use of the property, it seems like the impact would be the same. And your argument seems to be, well, look, this is only $4,000. It's not a big enough hurdle. But if it were, I know, half a million dollars to get back into the property, that clearly that would be a dispossession of the property, right? Well, that would be, again, in my view, analyzed as a regulatory take. Understand, and I'm not going there. I'm just talking about the specific point here about whether this is a dispossession of property. At some point, the monetary fine or the monetary payment would have to qualify as tantamount to dispossessing the Bollingers of their property. I go back to the point that the means make a difference. As the Horn case confirmed again recently, how the government goes about doing it is important. And I think we're dealing with a hypothetical that's not actual here. The way that works. No, but I'm just trying to flesh out where the line is between dispossessing them of the property or not. And it seems like it's not tenable to suggest that a monetary fine of any amount could never qualify as a dispossession of the property. Again, your honor, I don't want to be circular, but I would go back to the regulatory takings analysis. I understand. I understand you're dealing with and we're dealing with the case that's before us. But but I don't think you're conceding much to in this current context to suggest that at some point that monetary fine would qualify as dispossessing the property. We look to other sorts of cases where the regulation has an immense dollar impact. Penn Central, you know, the developer could not install a multi-story skyscraper as a result of the regulation and had a huge financial impact. That was still analyzed as a regulatory taking. And there's a... I understand you don't want to answer the question. I'm getting outside of the regulatory taking analysis. But anyway, go ahead. Finish up. I'm sorry. I'm not trying. I'm not trying to... No, I understand. You're fine. Okay. I would just, you know, I'm happy to address the Fourth Amendment claim or the private takings claim. Again, I don't believe that there's any sort of dispossession here in this case. And if we're talking about as applied on these facts, the Bollingers paid the payment. They took possession of their house. They were never dispossessed. So in an as applied context, I don't think that's really a colorable claim. And I believe for this court to find a physical taking or an exaction here would be a major deviation from Supreme Court precedent and the circuit's precedent. And we've requested that the court affirm the judgment of the district court. Thank you. Thank you, Counselor. We'll give you two minutes for rebuttal. Thank you, Your Honor. And I'll be really quickly. I'd like to address the discussion, Judge Nelson, that you just had with opposing counsel. But first I want to make clear, we're not conceding that a general monetary obligation can never be a taking. Well, that's unclear and Eastern Enterprises doesn't really resolve that issue. What we're saying is that you don't have to address that in this case because as the discussion that you just had, Judge Nelson, with opposing counsel shows, there are so many burdens on the property here. That's one way you know that this monetary payment is linked to the use of real property. Yes, they can move into their house even if they don't make the payment, but they're subject to criminal and civil sanctions, stiff civil sanctions. So it's a distinction without a difference. They can't move home unless they make a payment that was not in place at the time they terminate the lease, a property interest that was entered into prior to the time this monetary payment obligation arose. So for the Ballengers, it's inseparable. This payment is inseparable from the use of their property, either for leasing it or for using it for their own purposes. And if you again look at Koontz, look specifically at the dissenting opinion at page 623. And the dissent says the essential issue here, the key question is independent of the permitting process. Does requiring a person to pay money to the government or spend money on his behalf, just like here, constitute a taking required just compensation? The dissent says no. The majority says yes. That's this case. That in this case, there's a independent of permitting. There's a requirement to pay money linked to your property rights, which gives it the quality of property within the meaning of the takings clause to bring it within a physical takings analysis. And I'll stop right there. Well, thank you. Thank you both for helping us out with this difficult case. The case is now submitted. And that concludes the arguments for today in the court of going to recess.
judges: Clifton, N.R. Smith, Nelson